IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

RICHARD HEADLEY,

                Plaintiff,

        vs.

OMAHA CONSTRUCTION
INDUSTRY PENSION PLAN, et al.,

                Defendants.

4:21-CV-3161

MEMORANDUM & ORDER

The plaintiff, Richard Headley, worked on and off as an ironworker from 1960 to 1998, and during this period, he was a member of the defendant Iron Workers Union Local #21 ("Local #21"). Filing 1 at 2. Headley claims that during this time, and pursuant to a multi-employer bargaining agreement, defendant Omaha Construction Industry Pension Plan (a plan now administered by defendant CompuSys of Utah) received pension plan contributions on his behalf. Filing 1 at 2. Having not received any pension benefits from the Plan, Headley brought this action. Local #21 has moved to dismiss Headley's claims against it pursuant to Fed. R. Civ. P. 12(b)(6), arguing that Headley failed to allege sufficient facts to establish that it is a proper defendant under the applicable ERISA statutes, 29 U.S.C. § 1001 *et seq*. Filing 24. The Court agrees and will grant this motion.

BACKGROUND

Headley is 81 years old and lives in Lincoln, Nebraska. Filing 1 at 1-2. He began his career as an apprentice ironworker in 1960 and worked consistently in the industry for twenty-five years. Filing 1 at 2. In 1985, Headley took a hiatus from ironwork, later returning to the industry in 1992

and remaining until 1998, when a workplace injury left him permanently "disabled from doing any such work." Filing 1 at 2. Headley claims that at all times from 1960 to 1998 he maintained his "Union book" and paid his "Union dues." Filing 1 at 2. Additionally, during the periods that he was actively working as an ironworker, he alleges that pension contributions were made on his behalf to the Plan. Filing 1 at 2.

Although his work as an ironworker was intermittent, Headley asserts that his pension plan benefits were "fully vested" and that he "did not incur a break in service sufficient to force him to forfeit any pension plan benefits." Filing 1 at 2. In May 2019, Headley contacted Local #21 to inquire about his pension benefits. Filing 1 at 2. According to Headley, Local #21 informed him that they "had no records of any pension contributions made on his behalf, that his records were lost or destroyed, and that he did not have any vested pension benefits." Filing 1 at 2.

Believing he is entitled to pension benefits, Headley sued Local #21, the Plan, and CompuSys under the Employee Retirement Income Security Act ("ERISA"). Filing 1 at 1-2. Specifically, Headley asserts that (1) the defendants failed to pay the benefits due to him in violation of 29 U.S.C. § 1132(a)(1)(B); (2) the defendants failed to furnish requested documents in a timely manner as required by 29 U.S.C. § 1132(c)(1) and 29 U.S.C. § 1024(b)(4); and (3) the actions of the Plan administrators and/or trustees, by failing to keep and produce proper records of his contributions and pay his benefits, breached their fiduciary duties under ERISA. *See* filing 1 at 4-5.

## STANDARD OF REVIEW

A complaint must set forth a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This standard does not require detailed factual allegations, but it demands more

than an unadorned accusation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint need not contain detailed factual allegations, but must provide more than labels and conclusions; and a formulaic recitation of the elements of a cause of action will not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). And to survive a motion to dismiss under Rule 12(b)(6), a complaint must also contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Iqbal,* 556 U.S. at 678. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not shown—that the pleader is entitled to relief. *Id.* at 679.

Determining whether a complaint states a plausible claim for relief will require the reviewing court to draw on its judicial experience and common sense. *Id.* The facts alleged must raise a reasonable expectation that discovery will reveal evidence to substantiate the necessary elements of the plaintiff's claim. *See Twombly*, 550 U.S. at 545. The court must assume the truth of the plaintiff's factual allegations, and a well-pleaded complaint may proceed, even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely. *Id.* at 556.

## DISCUSSION
### PAYMENT OF BENEFITS UNDER § 1132(A)(1)(B)

Local #21 first argues that Headley failed to plead any facts showing it is the proper defendant under § 1132(a)(1)(B). Filing 25 at 3. Section 1132 allows a participant in a qualifying plan to bring an action to "recover benefits due to him under the terms of the plan." When a plaintiff asserts such a claim, the proper defendant is ordinarily "the employee benefit plan itself." *Ross v.*

*Rail Car Am. Grp. Disability Income Plan*, 285 F.3d 735, 740 (8th Cir. 2002). However, the Eighth Circuit has held that a claim can also be brought against a plan administrator. *Hall v. LHACO, Inc.*, 140 F.3d 1190, 1194-95 (8th Cir. 1998). Under ERISA, an administrator is defined as

> (i) the person specifically so designated by the terms of the instrument under which the plan is operated; (ii) if an administrator is not so designated, the plan sponsor; or (iii) in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe.

29 U.S.C. § 1002(16)(A).

As Headley's claim for benefits is equitable in nature—"an *in personam* order [requiring] the payment of benefits"—the critical step in determining whether the plan itself or the plan's administrator is the proper defendant is identifying which party has the "authority, under the relevant plan documents, to pay benefit claims from plan assets." *Greenwald v. Liberty Life Assur. Co. of Boston*, 932 F. Supp. 2d 1018, 1048 (D. Neb. 2013). Stated more simply, the proper defendant among them is "the party required by the plan to pay benefits." *Id.* (citing *Brown v. J.B. Hunt Transp. Servs., Inc.*, 586 F.3d 1079, 1088 (8th Cir. 2009)).

Based on Headley's own statements, the Plan and CompuSys are both the "pension plan" and the "sponsors and/or administrators" of the pension plan as "defined in 29 U.S.C. § 1002(16)(A)." Filing 1 at 1-2. Conversely, Headley's complaint simply provides that Local #21 is a "labor organization," without asserting its relation, if any, to the multi-employer Plan. Filing 1 at 1-2. And, in his brief, Headley conceded that "[i]t is correct that Local #21 was

4

not the plan administrator." Filing 26 at 1. Therefore, since Headley concedes that Local #21 is not the benefit plan or a plan administrator, it is not the proper defendant under § 1132(a)(1)(B).

For the sake of completeness, the Court will briefly note that Headley's complaint also provides no facts indicating that Local #21 is in any way responsible for making benefit payments pursuant to the Plan. The only fact Headley provided in his complaint related to Local #21 and the Plan is that the union told him "he did not have any vested pension benefits." Filing 1 at 2. At most, this may indicate that Local #21 has some role in maintaining records of contributions made and benefits available to its members under the Plan. But, that alone does not support a plausible inference that Local 21 has final authority to make benefit payments pursuant to the Plan. And the most authoritative statement on the issue in Headley's brief to the Court is that he does "not yet know . . . what role the Union had in supervising the pension contributions, collection, distribution and allocation to the proper accounts." Filing 26 at 4. That is not enough to overcome a motion to dismiss. Therefore, the Court will dismiss Headley's § 1132(a)(1)(B) claim against Local #21.

PRODUCTION OF PLAN DOCUMENTS

Local #21 similarly argues that it is not the proper defendant under ERISA's document production provisions since Headley has failed to plead any facts indicating that it is a plan administrator. Filing 25 at 4. The Court agrees. The text of §§ 1024(b)(4) and 1132(c)(1)(B), which work in conjunction, make it clear that the Court may only impose penalties on plan *administrators* who fail to furnish appropriately requested information to a participant in a timely manner. And the Eighth Circuit has also made it clear that "the only entity that may be fined under § 1132(c)(1)(B) is the plan administrator." *Ibson v. United Healthcare Servs., Inc.,* 877 F.3d 384, 390 (8th Cir. 2017). As stated

above, Headley concedes that Local #21 is not an administrator of the pension plan at issue. Thus, Local #21 is not the proper defendant, and the Court will grant its motion to dismiss these claims.

### BREACH OF FIDUCIARY DUTIES[1]

Because Local #21 is not a plan administrator, whether Headley can assert a claim against the union depends on whether he has pled sufficient facts to allow the Court to plausibly infer that Local #21 is an ERISA fiduciary, and in turn, breached its fiduciary duties. Local #21 argues that Headley has not met this burden since his complaint does not allege any facts indicating that the Plan documents named Local #21 as a fiduciary or that Local #21 had any discretionary authority or control over the Plan's assets or administration which would render it a fiduciary. *See* filing 25 at 5. Further, Local #21 asserts that Headley has failed to allege any facts indicating how the union itself— apart from its members or officers that may have been appointed to the Plan's Board of Trustees—was involved with the Plan in a way that would render it a fiduciary. *See* filing 28 at 3. The Court agrees.

Under § 1132(a)(3), a plan participant may bring suit "to enjoin any act or practice" which violates Title I of ERISA or the terms of the plan, or "to obtain other appropriate equitable relief" to redress such violations. "This provision allows an individual plan participant to seek equitable remedies for breach of fiduciary duty in his individual capacity." *Knieriem v. Grp. Health Plan, Inc.*, 434 F.3d 1058, 1061 (8th Cir. 2006); *see* 29 U.S.C. § 1104(a). A

---

[1] Headley argues in his brief that whether Local #21 had fiduciary duties in this case is not governed entirely by ERISA, as part of the conduct at issue predates the Act. Filing 26 at 1. But, since all of Headley's claims arise under the Act, and all of his arguments are otherwise supported by the Act, the Court has no choice but to apply ERISA's definition.

6

person owes a fiduciary duty under ERISA if he is named as a fiduciary in the plan documents, identified as a fiduciary by an employer or employee organization pursuant to the plan's procedures, or

> to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

§ 1002(21)(A); § 1102(a)(1); *see McCaffree Fin. Corp. v. Principal Life Ins. Co., 811 F.3d 998, 1002 (8th Cir. 2016)*. However, people who perform certain ministerial functions for an employee benefit plan (within the framework of the plan's practices and procedures that are made by other persons) are not fiduciaries so long as they "have no power to make any decisions as to plan policy, interpretations, practices or procedures." 29 C.F.R. § 2509.75-8. Such ministerial functions can include maintaining participants' service and employment records, calculating benefits, and collecting and applying contributions as provided in the plan. *Id.*

Headley does not allege that Local #21 rendered investment advice with respect to the Plan or that it has a responsibility to do so. Further, Headley concedes that Local #21 is not an administrator, and accordingly, makes no assertions that it has discretionary authority in the administration of the Plan. Instead, Headley's claim that Local #21 is a fiduciary appears to rest entirely on a factual theory raised for the first time in his brief: that the union or union

7

officers appointed as Plan trustees may have had discretionary authority over the management of Plan assets, specifically Plan contributions, making Local #21 a fiduciary. *See* filing 26 at 3. And, he argues, if Local #21, or its officers acting as Plan trustees, failed to properly collect, record, or remit contributions to the pension fund, the union could be liable under ERISA for breach of its fiduciary duties. *See* filing 26 at 5.

But on the facts as currently alleged in Headley's pleading, the Court cannot reasonably infer that Local #21 had any discretionary authority or control over the management and disposition of Plan contributions. Headley's only allegations about Local #21 in his complaint are that (1) it is a union labor organization, (2) he was a due-paying member of the union, and (3) Local #21 has no records of any contributions allegedly made to the Plan on his behalf. Although Headley states repeatedly in his complaint that "contributions were made on his behalf to the Plan," he never once alleges that Local #21 was responsible for collecting and remitting these contributions. *See* filing 1. Similarly, when alluding to contributions that were allegedly deducted from his paychecks, Headley does not assert that Local #21 was the entity withholding those deductions. *See* filing 26 at 5.

The Secretary of Labor's definition of plan assets does include "amounts . . . that a participant or beneficiary pays to an *employer*, or amounts that a participant has withheld from his wages by an *employer*, for contribution . . . to the plan." 29 C.F.R. § 2510.3-102 (emphasis added). In other words, employee contributions are plan assets, and employers who control and mishandle those contributions may be liable for breach of their fiduciary duties. *See In re Harris*, 898 F.3d 834 (8th Cir. 2018); *Phelps v. C.T. Enters., Inc.*, 394 F.3d 213 (4th Cir. 2005). But, absent *any* factual allegations from Headley indicating that Local #21 was his employer—or, at the very least, that

8

it collected and managed his employee contributions—and failed to properly remit these contributions, it would not be reasonable for the Court to infer that Local #21 somehow exercised discretionary control over those contributions. To the same extent, Headley's reliance on cases discussing whether employer contributions are plan assets are unpersuasive where Headley has failed to allege that Local #21 was his employer or had any discretionary authority or control over contributions. *See* filing 26 at 3-4.

It follows that since Headley did not allege how, or even if, Local #21 played any part in *collecting* Plan contributions, he also failed to establish that Local #21 exercised any discretionary authority or control over the management and disposition of those assets—which is key to a finding that Local #21 is a fiduciary. And, without any factual support otherwise, it would not be reasonable for the Court to infer that Local #21 was managing the disposition of Plan assets where the law prohibits a union, as an entity, from engaging in such conduct. *See N.L.R.B. v. Amax Coal Co., a Div. of Amax, Inc.,* 453 U.S. 322, 328-34 (1981) (noting that pension funds must be "kept in a trust separate from other union welfare benefits" that is administered by "neutral persons as the representatives of the employers and the representatives of the employees may agree upon"). Without more, Headley's statement in his brief— that he does "not yet know . . . what role the Union had in supervising the pension contributions, collection, distribution, and allocation to proper accounts"—simply is not enough to transform his assertion that Local #21 *could* be liable as a fiduciary from mere possibility to plausible claim as required by the pleading standard. Filing 26 at 4.

Headley's uncertainty as to "whether other Union members had supervisory authority on plan contributions" is also insufficient to support a reasonable inference that Local #21 could be liable as a fiduciary. Even taking

9

as true Headley's claim that the Plan's Board of Trustees—which may have included officers of Local #21—breached their fiduciary duties in their accounting and remittance of the contributions, *see* filing 1 at 4, this is not sufficient to infer that Local #21 would be liable. Under ERISA, "trust funds established for the benefit of employees are separate entities from labor organizations," making trustees "separate from the union." *Nesse as Trs. of Minn. Laborers Health and Welfare Fund v. Green Nature-Cycle, LLC,* 7 F.4th 769, 780 (8th Cir. 2021) (citing *N.L.R.B. v. Constr. & Gen. Laborers' Union Loc. 1140,* 577 F.2d 16, 20 n.6 (8th Cir. 1978)). Thus, even taking as true Headley's conclusory statement that the Plan's trustees breached their fiduciary duties, that in no way implicates Local #21.

The Court recognizes that part of Headley's claim for breach of fiduciary duty rests on the allegation that the defendants have failed to provide him with pertinent plan documents. And, while lack of access to these documents may have prevented Headley from *confirming* that Local #21 was explicitly named as a fiduciary under the plan documents, he was not prohibited from *alleging* facts in his complaint establishing that, pursuant to the Plan's documents or procedures, Local #21 had discretionary control with respect to the management of the Plan or its contributions—if he truly believed such claims were "likely to have evidentiary support after a reasonable opportunity for . . . discovery." Fed. R. Civ. P. 11. But he didn't.[2]

The Court is neither required nor inclined to let an otherwise factually-unsupported claim survive merely because it is *possible* that something

---

[2] Perhaps with good reason. "ERISA vests the 'exclusive authority and discretion to manage and control the assets of the plan' in the trustees alone, and not the employer or the union." *Amax Coal Co.,* 453 U.S. at 329 (citing § 1103(a)).

10

Headley *did not* sufficiently allege could later turn out to be true.[3]  Because Headley has failed to allege any facts from which the Court could plausibly infer that Local 21 was an ERISA fiduciary,[4] the Court will grant Local #21's motion to dismiss his claims against it.

IT IS ORDERED:

1.  Iron Workers Union Local #21's motion to dismiss (filing 24) is granted.

2.  Iron Workers Union Local #21 is terminated as a party.

Dated this 3rd day of November, 2021.

BY THE COURT:

John M. Gerrard
United States District Judge

---

[3] Headley has not alleged sufficient facts for the Court to reasonably infer that Local #21 was an ERISA fiduciary with  respect to the actions in the complaint. Nor has Headley made any allegations that would allow the Court to reasonably expect that discovery would reveal evidence to substantiate this claim. However, the Court will note that if discovery were to reveal facts to the contrary, nothing would preclude Headley from seeking leave to replead at that time.

[4] Nor are Headley's claims that Local #21 failed to keep or produce proper accounts of contributions enough, on their own, to infer that Local #21 breached a fiduciary duty. Alleging that Local #21 was responsible for maintaining service and employment records under the Plan does not allow the inference that it had discretionary authority over the plan's assets or administration that would render it a fiduciary. *See* 29 C.F.R. § 2509.75-8.

11